The District Court erred by adjusting the attorney fees award based on the outcome of the litigation without tying that outcome directly to the quality of the plaintiff's attorney's performance and without making the adjustments within the lodestar calculation itself as required by the Supreme Court in this decision in Perdue v. Kenny A. Specifically, the trial court erred by holding that it was constrained as a matter of Fifth Circuit court precedent as a matter of law to not award more than 6.5 times an award based on the holding of Migas out of the circuit. We believe that at best Migas is an outlier at this point and at worst it has been overruled by the later jurisprudence specifically of Kenny A. Specifically, the Supreme Court in Perdue issues or rules in fee setting in civil rights cases. First, the purpose of Section 1988, the underlying purpose, is that a reasonable fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. There have been a number of different methodologies used to do that and the second point Perdue makes is that the lodestar methodology is now the prevailing methodology. I'm Margaret. I think you got the timing wrong. It looks right to me. Six minutes? I started with eight. Oh. Oh, I'm looking at the wrong. I'm sorry. I think we're right. I'm sorry. I'm sorry. I apologize. I was looking at the next case. And that the lodestar methodology has now the prevailing methodology in federal courts. Well, may I cut to the chase here? It seems to me Perdue was about circumstances under which a court could enhance a fee. I had a case on appeal shortly after where I had to read Perdue in some detail and I didn't see it as modifying our traditional standards in any way, nor do I think any subsequent case of our court has modified those standards. I'll take the . . . So I don't think, yeah, so I don't think Perdue requires us to disregard our prior case law, nor does it require us to disregard Farrer v. Hobby, for instance, about adjusting the amount of the award to the amount of success. Migas, as a binding precedent, is a different issue. There are a number of issues there. Let me start with the first one. I do believe you're correct in saying that this circuit has not come to the conclusion that its previous jurisprudence has been affected by Kenny A. And our position is that that's exactly what's incorrect by the trial court because that's what we're asking this panel to do. And specifically, that's because of the methodologies, and if you look at Perdue, it says specifically that the Johnson factor is an alternative methodology to the Lodestar. It's not a complementary methodology. And what this circuit has been trying to do is to superimpose the Johnson factor jurisprudence into a Lodestar jurisprudence, in other words, do both. And Perdue says that's not what we're supposed to be doing anymore, that specifically the appropriate method. Well, you don't disagree that Perdue did not affect the Supreme Court decisions like Hensley and Farrar that say that the amount of fee is dependent, at least in significant part, on the results obtained. Yes, we do disagree. Our position is Farrar is a limited exception to the Lodestar rule based on the old dict snake bat law. In that case, Mr. Farrar sued for millions of dollars when he was alleged to have committed homicide against young people at a children's school, won a purely nominal victory, was awarded zero damages, and wanted hundreds of thousands in attorney's fees. All the courts found that that was inappropriate, but the key in our belief is that Farrar was limited jurisprudentially by Justice O'Connor's concurrence specifically in that case that says that the monetary award alone is not how you determine whether or not it's a significant victory, that there are other issues involved, including the potential for societal benefits. And those are best determined by the trial court in utilizing the Lodestar factors. So our answer specifically is yes, Farrar is good law, but it doesn't apply here because this was not a, quote, nominal or merely technical victory. There was an actual victory with an actual award. It was low, but that's based on the fact that compensatory damages in these kind of cases can be low when there's no physical injuries. But and then on the other issue of Hensley, we specifically, the trial court made the to at this time, and we certainly do not believe it was clear error, that the reduction that it gave for the lack of success on the merits for the other claims that were not successful properly adjusted for that in the Lodestar itself. So the answer is we believe that Farrar is a very limited exception, and that Hensley applies to multiple, deals with multiple claims in different varying levels of success. And in this case, the proper way to do it is to allow the trial court, at first instance, to make that determination as to whether or not there's more to it, so to speak, than to mere monetary award, but whether there was some societal benefit in the community at large. And we believe the trial court made that. So which is very, which is one of our important points in this, in our position, is we believe that this case, that the trial court erred as a matter of law when it said it was constrained as a matter of law to be capped at 6.5 times, because we believe that's directly opposite to the holding of the Supreme Court in the city of Riverside that says you can't have an actual proportionality rule. So if this, if the jurisprudence of this circuit is that, then that obviously we believe is incorrect. I don't know if that answers your question, but. Well, I understand your argument. And the next clarification of the rule would be that the strong presumption of the Lodestar method yields the appropriate fee, and specifically that's where we get into the determination of how, of why we believe Purdue is, affects the jurisprudence of the circuit, because that's where the Supreme Court specifically compared the Lodestar to the Johnson factors methodology, and said that they are in direct conflict. And in this case, the trial court tried to do both. And we, and basically the point is, is that eight of the Johnson factors have been held by the Supreme Court to already be subsumed into the calculation of the Lodestar, including success on the merits. So our point is, any modification should have been made into the Lodestar, not after the Lodestar was calculated, and then done this entire new modification based on these other factors. Thank you. All right. Ms. Hatchew. May it please the court. There is value in a verdict vindicating constitutional and statutory rights, if for no other reason than to provide a measure of deterrence to other violators, and to remind municipalities that emphasis on their personnel policies is, in fact, important. At what point in locales that tend toward modest monetary verdicts are we telling those victimized by gross but not physical sexual harassment over a period of time, or other violation of their rights, that a private attorney general is not for them? Those two statements came out of Judge Clark's opinion in this case. And it's very clear to me from reading his opinion that he wanted to pay us his original approved Lodestar of $94,612.80. He found that that was appropriate after taking a 20 percent reduction for the limited recovery that we proposed and he accepted. The appellees want to argue that we're dictating our fee. We didn't dictate anything. We made a proposal and he accepted it. He certainly could have reduced this by 30 or 40 percent if he thought that was appropriate, but he didn't. Now, as far as Migas, we believe that the holding in Migas v. Pearl Vision, which was based on Farrar, obviously the panel in Migas, you can tell by reading their opinion, thought that that was a nominal damages case. The defendants had appealed the mental anguish award and the court made perfectly clear to me, at least, that they didn't think she should have gotten any mental anguish damages, but they couldn't find a reason to reverse it. They thought the case should have settled, whatever, for whatever reason, they thought Migas was a nominal damages case and that's how they ruled. This is not a nominal damages case. Not only do we have the $5,000 jury verdict, but we have the societal benefits and the change in personnel policies. Now, we believe that since Purdue, the holding in Migas has been restrained at the very least, it's probably overruled, by the declaration in Purdue that the Lowe's Star is the guiding light of our fee-shifting jurisprudence. We understand that in Purdue they specifically address the enhancement of attorney's fees, but Malaya v. Metro North Railroad, in that case, the Second Circuit and the cases following that case in the Second Circuit, have all interpreted Purdue to say that it applies to all adjustments in the Lowe's Star, not just enhancements. We ask this Court to follow the Second Circuit's reasoning and adopt Purdue as applying to all adjustments in the Lowe's Star, not just in enhancements. Not only does the U.S. Supreme Court state that it's inappropriate to apply the Johnson factors after the Lowe's Star has been calculated, but Purdue also says that the factors of attorney performance and the results obtained are one factor to be considered. And if you go back and look at the Migas opinion, the Court specifically says, regardless of the exceptional ability of the attorneys, we find the ratio too large. Well, that tells you right there that they separated the attorney's performance from the fee award, from the results obtained, and Purdue says, no, you can't do that. The results obtained have to be tied to the attorney's performance, and unless there's specific evidence in the record as to the attorney's performance as to why the Lowe's Star should be adjusted, then you can't adjust the Lowe's Star. There's nothing wrong that I could see that Judge Clark said anything about our performance. In fact, I think he said it was pretty good. He talked about the ability of the attorneys, and he certainly didn't say we were inferior in any way. What accounts for the verdict then? Well, Judge Clark, he mentioned that, and he said it could be because this is rural East Texas. Five thousand dollars is a lot of money to a lot of people. Rural East Texas is known for dealing in verdicts that have nine figures, so I think five thousand speaks volumes, but not in favor of your client's verdict here. I know you're talking about the patent litigation. Not just patent. A lot of cases, but . . . But that was what Judge Clark said, is he thought that that . . . and it also could be because they realized that the city got rid of the sexually accrued city manager, and other than that, I can't account for the small fee. But I will tell you that, at least in my experience, sexual harassment verdict is much harder to obtain than a retaliation verdict. It's much harder to prove sexual harassment occurred than to prove that somebody was fired because of it. So, this was a . . . it was an odd verdict in both senses, that it was five thousand and that they found for sexual harassment. But regardless of that, we think it's clear from Purdue that the load star should not be adjusted, except for exceptional and rare circumstances, which Judge Clark said this was a normal case. And so, we believe he abused his discretion, number one, because we already took the twenty percent reduction for the lack of success, for the limited recovery, and that was for all of it, not just for the two claims that we didn't prevail on, but also because there was no evidence in the record to say that our performance was inferior. Now, regardless of Purdue v. Kenney A. and Malaya v. Metro North Railroad, if this Court decides not to follow the reasoning and apply Purdue to any adjustment in the load star, we would point out that this Court has consistently held that it's an abuse of discretion to reduce the load star on the sole basis of a low damages award. And that is, as recently as last year, in the law office . . . I'm sorry, Cerner v. Merrill, which was the law office of Joseph Onwetika. The year before that, it was Norsworthy v. Winn Consulting. The year before that, it was Black v. Settlepoo, which I admit was DICTA. And then there was Cizan and Singer and Hollowell, Cobb v. Miller. All those cases say that you cannot reduce the load star only because of the limited success of the case. And so, if you don't want to follow the reasoning in Purdue v. Malaya, we would ask you to follow this Court's own precedent in not reducing the load star based on the low damages award. We would ask this Court to reverse the attorney's fee award for $25,000, render judgment for combs for attorney's fees in the amount of $94,612.80. We would also request a judgment for fees and costs in pursuing this appeal. And we would point out that a remand for recalculation of the load star is not appropriate because the judge has already made factual findings that are not being objected to and for which the defendants have not filed a cross-appeal. Thank you. All right. Mr. Cain? Thank you, Your Honor. May it please the Court. I think, you know, despite the cases since then, the Hensley case still sets the standard. The most important factor in determining the amount of attorney's fees is the success. It's explicitly in that case that if you calculate the load star, the load star may be too much. That's the case here. Now, I'd like to make a distinction between small-dollar cases, and some types of cases are not going to result in large verdicts, no matter how good the performance of the counsel is. It may take a lot of legal time and effort to get you there. Fair Labor Standards Act, Family and Medical Leave Act, cases like that are not going to be big-dollar cases ordinarily. So in the cases that opposing counsel cites on the question of not reversing simply because of a low verdict, they tend to be FSLA cases. And I think that's distinguishable from here, where there are multiple claims for what could result in a substantial verdict, had the plaintiff been successful. Here, I forget the exact numbers, but the back pay would have been $123,000, I think. They were seeking well over $300,000. Yes, $200,000 in damages for the two other claims. So, it was a pretty, it was not a successful case for them. It's very similar factually to Migas, where the plaintiff was slightly more successful. The district court heard a magistrate judge's opinion that gave them six-and-a-half times the amount of damages award. In this court, hell, that was too high. This, that's, the factual similarities are quite striking. I don't see that the . . . Well, the court would have abused his discretion if he applied the wrong legal standard. And if he said the Migas fixes a 6.5 ratio that is the maximum in so-called low-dollar, low-success cases, I would have to disagree that there's any kind of mathematical rule. I don't think that there's a mathematical rule, and I don't think that's what Judge Clark really meant by that. He was very mindful of this court's ruling of a case with a very similar factual pattern that found six-and-a-half times to be too high. And he was very mindful of the need to award attorneys fees sufficient to allow competent counsel to represent plaintiffs. But he also felt constrained by this court's ruling of Migas and the other cases, including Hensley, where the success of the plaintiff was key to awarding damages. I don't think he was saying that six-and-a-half is a bright line, but he was saying that that was the guidance of this court, that six-and-a-half, this court was going to look at it very closely as abusive discretion if he granted more than six-and-a-half times on a similar factual case. I think on the Millier case that counsel cites, I think that it's second circuit, of course, which is not binding here. But I think that it was right in its result, unquestionably. The plaintiff had recovered $612 in lost wages. The court awarded $204 in attorney's fees plus costs. That was plainly abusive discretion. The court went on and talked in broad terms about what the court should have done. They should have looked at and they do in the second circuit want to look at the low star as far as calculating the amount, evaluating the success of the claim in the low star portion of the analysis rather than go back into Johnson. Johnson factors the way this court and other courts do. I think that is appropriate in light of Hensley and even in light of Perdue. The low star is a strong presumption in Perdue that it's not the last word. This court always held that the low star was a strong presumption before Perdue and after. Perdue did not change this court's jurisprudence. But what I'd have to disagree with Millet Court on is when it states that litigation outcomes are only relevant when that's a direct result of the quality of the attorney's representation. That is based on a statement in the Perdue case talking about enhancement. The court said that the low star is ordinarily going to take into account the quality of the attorney's representation because good attorneys are going to be able to charge higher fees and get a better result. That doesn't mean it doesn't go the other way around. You still have to look at some degree of proportionality, not a fixed ratio like was condemned in the Rivera case, but some sort of relationship. We have cases since Midas which have not read it as strictly requiring the six-to-one reduction that we applied in Midas. I was on the panel in Midas, but I have to tell you that it's been a while ago since doing it, and I reread it and all that, but I don't necessarily have any greater recollection of it than much of any other old case reading. Since Midas, I would just say no. In Hernandez, we have other cases that have not construed Midas as requiring, mandating a strict proportionality analysis and have just moved down the road. They're out there, not saying Midas has been overruled and so forth, but have just not read Midas as a hard-line requirement for proportionality. Some of those cases, Hernandez and others, of course, have just said, well, in Midas, there was not the articulation by the trial court for the reduction, et cetera, et cetera, and have moved on rather than this hard core rule. That said, and all of these, of course, have been plaintiff-demanded X gets Y, et cetera. You look at that, but just not a requirement, but that Midas is a consideration of the trial court in the whole calculus of all these cases, but not a requirement that you can't go further if you don't otherwise articulate reasons for the reduction, et cetera. Is that a fair reading of Midas, or you're stuck on it, it just drives the case? Well, I think, obviously, I think very highly of Midas' opinion. Not surprised there. But I think the particular usefulness of Midas to this case is the factual procedural similarities, the amounts claimed versus amounts recovered, the relative lack of success. If Judge Clark's opinion is viewed as a strict, bright line where it can't exceed 6.5%, 6.5 times, then yes, that would be a problem. I don't think that's what he intended. I think he was looking at a similar case with a similar factual background to this one where this court found that 6.5 times of recovery was just too high. And I think that in light of all the balancing factors he did, he was very conscious of the effect this suit had on the city of Huntington, which did not include, by the way, changing its personnel policy. There's no evidence that that was a cause of that. But he wants to, on the one hand, make sure that plaintiffs' counsel get paid a fair amount for taking on these cases, but at the same time, he doesn't want a windfall. And that's fully consistent with this court's jurisprudence and Supreme Court jurisprudence. I have . . . this morning, I did some looking last night. I wish I had done it earlier, but I cited the case . . . You bring up a good point. Is that what you're talking about? Yes, sir. Those aren't terribly important, except that they are post-Purdue cases. Yeah, 2013, 2010, 2013. That's not really what Rule 28J talks about. No. I want to have the court decide . . . All the point is on those cases is those are post-Purdue cases where . . . Well, I mean, they're out-of-circuit cases, first of all, and I mean, they're old cases. So I guess the point is to punctuate. We seem to have more noncompliance with Rule 28J than we do compliance with it, so you join a group of lawyers who seem to do that. But the real point of my query is, aside from that, is they're full . . . So what's the takeaway? I mean, they're out-of-circuit cases. What's the point? You just cite them. I mean, they're there, so what's the takeaway from them? Well, Your Honor, I apologize for the delay. I did not notice them until last night, honestly. But the point of them is that they are post-Purdue cases where either the Court of Appeals affirmed a cut in attorney's fees from the Lowe's Star or the Court of Appeals affirmed and actually imposed such a cut. I mean, they're not strictly that relevant. Please disregard them. I did not mean to cross any lines. Your Honor, as I said, you know, I think you're forearm with what I was saying, but that and I was standing up and peeping at them. I just wanted to know if there's a . . . But you explained to us what it is from them you felt was . . . It's very limited relevance. All right. And I didn't want to mention anything without giving it to the Court to have the citations on it. All right. Anything else? No, Your Honor. I really think that I have made the case I have. Again, I think that Judge Clark tried to balance the various factors and they're relevant in awarding attorney's fees. I think that the Johnson factors are still alive. I think that he was within his discretion to cut fees to have some proportionality, not a rigid proportionality, but some relationship to the success of the case. The plaintiffs did not succeed. They lost. They lost bad. But the Court, Judge Clark gave them ample attorney's fees in light of what they recovered and what they did. Twenty thousand dollars on a five thousand dollar recovery is not a bad attorney's fee. Thank you, Your Honor. Okay. Thank you, Mr. Cain. Appreciate your briefing and your argument. All right. Ms. Hatcher, you had rebuttal. Yes. As far as the post-Purdue cases that defense counsel or appellee's counsel mentions where this Court, he says this Court has had ample time to address at Purdue, this issue has not been squarely placed before this Court since Purdue has been decided. There has not been another plaintiff up here arguing this. Black did in Black v. Siddlepoo, and of course that was remanded for other reasons, but we know the dicta that the Court made in that case. Yes, that was an FLSA case. Norsworthy, however, was not an FLSA case. Norsworthy, I believe, was a sexual harassment case. But the Court has not directly addressed this issue, so counsel is not correct that you've had ample time to decide this. The Court is not going to decide something that hasn't been asked of them. At least that's what I believe. Well, let me just suggest to you that this Court would normally not say that our precedent has been dislodged by a Supreme Court case unless it's pretty clear. I understand that. It has to be unequivocal, and I understand that. The worst that you can say about Purdue in this case is Purdue says the Lodestar is a good idea, the Johnson factors are somewhat subjective, but we use both. Well, and I think that that's a problem that the Supreme Court has is that using both, it leaves too much discretion up to trial judges. The Court says nothing about that in Purdue. It just says there are two methods, and the Lodestar method accounts for everything relevant. It doesn't say you may no longer use the Johnson factors. I'm just telling you, if you're asking us to disavow our former precedent, that's a pretty high hurdle under the circumstances of what the Court said it was deciding and the way in which it decided it in Purdue. I understand, and yes, I am asking you to follow the reason in Malaya. That's what they did. I understand that a panel can't necessarily do that unless you interpret Purdue to be an intervening change in the law, which is why I ask you to rely on your precedent that you don't reduce an award based solely on a small damage claim, which there's plenty of cases to back that up. And I will say, contrary to what counsel just stated, Judge Clark did say this pure ratio approach has a merit of simplicity, but the Court did not indicate what the proper ratio should be. That's because there is no ratio. You're not supposed to determine attorney's fees based on a ratio of the verdict. I mean, that's just the law. And then his very last paragraph he says, however, well, prior to that he says the attorney's fees, the appropriate amount would be $94,612.80. However, this Court is constrained by the holding in megas to reduce the total to something less than six and a half times the actual damages awarded. That is just wrong. I mean, that, like you said, there is no matter. Suppose we were to vacate and remand and tell him if he, let's say, assume we accepted that he misinterpreted megas as a binding ratio of some sort, and then we tell him to evaluate the case in terms of Hensley. Don't you come out the same, which is that you've got to have some proportion when you put a case to the jury with ultimately asking the jury to award you $200,000 and they give you five, but that's not a real big outcome for a plaintiff. It wasn't a really good case or it was a very bizarre jury. Actually, it was a very good case, and Judge Clark even mentioned that there was evidence of continual sexual harassment of the plaintiff by the city manager. We had ten to twelve witnesses. This was nothing like megas, contrary to what counsel says. We had ten to twelve witnesses. Megas had a couple witnesses. Megas had a three-day bench trial. We had a two-week jury trial. There was continual sexual harassment on a daily basis. Megas got fired because she was pregnant. That was it. And the court even said, we know you feel vindicated because the federal court says you were right, that you shouldn't have been fired because you were pregnant. But that was the limit to her damages, which is why the court opined that they didn't think she should get any mental language damages. Our case, on the other hand, was a plethora of evidence of sexual harassment, and Judge Clark said that he found the witnesses credible and that he believed it. He found there was sexual harassment. That was his finding. So it's nothing like megas at all. So I take issue with that. But as far as we don't want it remanded for recalculation because he's already made the findings. He's already taken the reduction for the limited recovery. He doesn't need to take any more. And I thank you for your time. Thank you. All right. Thank you, counsel, both sides for the briefing and argument.